# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )  **Case No. 2:19-CR-29** |
| | )  **JUDGE CORKER** |
| JASON LYNN KINSER | ) |

## DEFENDANT'S SENTENCING MEMORANDUM

COMES the Defendant, Jason Lynn Kinser ("Mr. Kinser"), by and through his undersigned counsel, J. Eric Butler, and files this Defendant's Sentencing Memorandum ("Sentencing Memorandum"). For the reasons set forth more fully herein, Mr. Kinser respectfully asks this Court to sentence him to a term of six (6) months probation, rather than a period of incarceration, as the sentence that is "sufficient, but not greater than necessary" to achieve the statutory goals listed in 18 U.S.C. § 3553(a).

## I.
## INTRODUCTION

On March 15, 2019, Mr. Kinser appeared before this Court and entered a plea of guilty to an Information charging him with one count of intentionally engaging in a pattern or practice of hiring for employment unauthorized aliens in violation of 8 U.S.C. § 1324a(a)(1)(A). [Doc. 1]. The offense of conviction is the result of Mr. Kinser's employment as the Kill Room Supervisor at Southeastern Provision, a slaughterhouse and meatpacking plant located in Bean Station, Tennessee. On April 5, 2018, federal agents with the Internal Revenue Service ("IRS") and the Department of Homeland Security executed a search warrant at Southeastern Provision. Mr. Kinser fully cooperated with the Government agents during the execution of the search warrant

on April 5, 2018, and he voluntarily submitted to an interview on the date of the raid stating to the federal agents he was directed by the owner of Southeastern Provision to hire unauthorized aliens to keep up with the growing production demands of the slaughterhouse.  [Doc. 2, p. 3, ¶ 4(f)].  Mr. Kinser also voluntarily met with federal agents again on July 20, 2018 to further assist the Government in its investigation of Southeastern Provision and its owner, James Brantley. Mr. Kinser has accepted responsibility for the offense of conviction, and he now appears before this Court for sentencing.

## II.
## SENTENCING PARADIGM POST-__BOOKER__

Congress requires the district courts to "impose a sentence sufficient, *but not greater than necessary*" to reflect the seriousness of the offense, to afford adequate deterrence, to protect the public from future crimes by the defendant, and to provide the defendant with any remedial treatment.  18 U.S.C. § 3553(a) (emphasis added).  The Sentencing Guidelines are now but one of seven (7) statutory factors the Court must weigh when determining a proper sentence in a given case.  See United States v. Booker, 543 U.S. 220, 245 (2005); 18 U.S.C. § 3553(a)(4).  "In the wake of Booker, therefore, the discretion of a sentencing court is no longer bound by the range prescribed by the guidelines."  United States v. Hughes, 401 F.3d 540, 546 (4th Cir. 2005).

When making a sentencing determination, the district court "must make an individualized assessment based on the facts presented."  Gall v. United States, 552 U.S. 38, 50 (2007).  "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."  Koon v. United States, 518 U.S. 81, 113 (1996).  "Underlying this tradition is the principle that 'the

2

punishment should fit the offender and not merely the crime.'" Pepper v. United States, 562

U.S. 476, 487 – 88 (2011) (quoting Williams v. New York, 337 U.S. 241, 247 (1949)).

### III.
### APPLICATION OF THE SENTENCING
### GUIDELINES TO THE OFFENSE OF CONVICTION

A violation of 8 U.S.C. § 1324a(a)(1)(A) is a Class B misdemeanor. See 8 U.S.C. §

1324a(f)(1) (setting the maximum statutory term of imprisonment for this violation at no more

than 6 months); 18 U.S.C. § 3559(a)(7) (identifying an offense imposing a maximum term of

imprisonment of 6 months or less as a Class B misdemeanor). As a result, the Guidelines do not

suggest a sentencing range calculation for this offense. [Doc. 2, p. 5, ¶ 8]; see also USSG §

1B1.9 ("The sentencing guidelines do not apply to any count of conviction that is a Class B or C

misdemeanor or an infraction.").

### IV.
### THE COURT SHOULD SENTENCE THE DEFENDANT TO A TERM OF PROBATION

"Although recognizing that the federal sentencing statute still 'requires a sentencing court

to consider Guidelines ranges,' Booker determined that sentencing judges are permitted 'to tailor

the sentence in light of other statutory concerns as well.'" United States v. Herrera-Zuniga, 571

F.3d 568, 581 (6th Cir. 2009) (quoting Booker, 543 U.S. at 245). Because the Sentencing

Guidelines do not apply to the offense of conviction, "the court may impose any sentence

authorized by statute for each count that is a Class B or C misdemeanors or infractions." USSG

§ 1B1.9 App. Note 1. "[A]fter giving both parties an opportunity to argue for whatever sentence

they deem appropriate, the district judge should then consider all of the § 3553(a) factors to

determine whether they support the sentence requested by a party." Gall, 552 U.S. at 49–50.

"[The Court of Appeals for the Sixth Circuit] has generally heeded the Supreme Court's repeated

instructions to afford sentencing judges wide latitude in imposing sentences outside the Guidelines — even in mine-run cases — so long as the explanation sufficiently articulates the sentence's appropriateness in relation to the 18 U.S.C. § 3553(a) sentencing factors." United States v. Johnson, 553 F.3d 990, 996 (6th Cir. 2009) (citations omitted).

Section 3553(a) lists seven (7) statutory factors the Court should consider when imposing a sentence. "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661; see also USSG § 1B1.4, cmt. background ("A court is not precluded from considering information that the guidelines do not take into account in determining a sentence within the guideline range or from considering that information in determining whether and to what extent to depart from the guidelines."). When this Court considers the totality of the circumstances in this case and filters all of the relevant facts through the factors listed in 18 U.S.C. § 3553(a), the Court should sentence Mr. Kinser to a term of six (6) months probation as the sentence that is "sufficient, but not greater than necessary" to accomplish the statutory factors listed in 18 U.S.C. § 3553(a).

## A.
### Nature and Circumstances of the Offense of Conviction

Southeastern Provision is a slaughterhouse and meatpacking plant located in Bean Station, Tennessee. [Doc. 2, p. 2, ¶ 4(a)]. At the time of the execution of the search warrant on April 5, 2018, Jason Lynn Kinser had been employed at Southeastern Provision for approximately 18 years. [Doc. 2, p. 2, ¶ 4(b)]. Mr. Kinser and his brother, Carl Kinser, gradually worked their way up to supervisory positions in the slaughterhouse. On the date of the

4

raid, Mr. Kinser was employed as the Kill Room Supervisor, a position he held for approximately 4 to 5 years prior to the raid. [Doc. 2, p. 2, ¶ 4(b)]. In his capacity as Kill Room Supervisor, Mr. Kinser had been delegated the authority by the slaughterhouse owner, James Brantley, to hire employees. [Doc. 2, p. 2, ¶ 4(b)].

A few years prior to the raid on Southeastern Provision, James Brantley hired a consultant in the meat packaging industry to advise Mr. Brantley on how to increase production and improve the company's financial position. As a result of some of the ideas the consultant put into place, production at Southeastern Provisions increased exponentially. Because of the drastic increase in production, and due to the less than desirable working conditions, Mr. Brantley instructed Jason Kinser and Carl Kinser to fill the various positions in the slaughterhouse by any means necessary, to include hiring unauthorized aliens. As a result of the raid by federal agents, the Kinsers also learned Mr. Brantley had authorized them to hire unauthorized aliens in order to reduce Southeastern Provision's FICA tax obligations, unemployment insurance premiums, unemployment tax obligations, and workers' compensation insurance premiums.

As the Kill Room Supervisor, Jason Kinser felt pressured by Mr. Brantley to hire unauthorized aliens in order to meet growing production demands. In Bean Station, Tennessee, Mr. Kinser was making a decent wage to support his family, and he felt he would lose his job if he failed to meet Mr. Brantley's production goals. Following the execution of the search warrant on Southeastern Provision on April 5, 2018, Jason Kinser voluntarily resigned his position with the slaughterhouse and took a much lower paying job. Jason also retained the services of an accountant to voluntarily amend his personal income tax returns (Forms 1040) to properly report all of the wages he was paid by Southeastern Provision. The amendments to the tax returns were

5

necessary because Mr. Brantley filed erroneous Forms W-2 with the IRS in an effort to underreport Southeastern Provision's employment taxes. As evidenced by the IRS Account Transcripts and personal checks attached as Exhibit A to this Sentencing Memorandum, Mr. Kinser has fully paid the additional income tax liabilities, including interest, owed for the 2015 and 2016 tax years. Mr. Kinser also filed his 2017 Form 1040 to fully report all wages paid by Southeastern Provision during the 2017 tax year despite the erroneous employment records maintained by his employer.

### B.
### *History and Characteristics of the Defendant*

"In any event, the analysis of the statutory factors cannot end with the determination of the seriousness of the offense, itself inexact science." United States v. Young, No. 1:09-cr-252, 2010 U.S. Dist. LEXIS 10086, at *10 (W.D. Mich. Feb. 5, 2010). The Court must also consider the relevant facts personal to Mr. Kinser.

Jason Lynn Kinser was born on June 13, 1978 in Morristown, Tennessee. Mr. Kinser graduated from Rutledge High School in 1997, and he never attended college. Instead, after graduating high school Mr. Kinser immediately went to work to support himself and his family. Mr. Kinser is married to Susan Michelle Kinser, a school teacher, and they have two sons and one daughter of their marriage. Mr. Kinser serves as Deacon at his local church, and he is held in high regard by his fellow church members and the community at large as evidenced by the letters attached as Exhibit B in support of this Sentencing Memorandum.

Mr. Kinser also is an avid hunter, and he enjoys taking his sons on hunting trips throughout the year. As an avid hunter, Mr. Kinser respectfully asks this Court to forego imposing a restriction on his ability to possess his firearms during any term of probation this

6

Court may impose.  See 18 U.S.C. § 3563(b)(8) (permitting the Court at its discretion to order a defendant to refrain from possessing a firearm during a term of probation).    Mr. Kinser's conviction for a nonviolent misdemeanor does not warrant restricting his possession of a firearm during any term of probation.  See United States v. Voda, 994 F.2d 149, 153 – 54 (5th Cir. 1993) ("Since [the defendant's] past behavior does not indicate that his possession of firearms makes him dangerous, there is no need to impose this condition to protect the public from future crimes by [the defendant].").

### C.
### *The Need for the Sentence Imposed and the Kinds of Sentences Available*

Under 18 U.S.C. § 3553(a)(2), Congress directs the district courts to consider four overarching purposes of sentencing: (1) just punishment; (2) general deterrence; (3) specific deterrence; and (4) rehabilitation.  Section 3553(a) expressly dictates that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with" these purposes. "And 'necessary' is the operative word . . . ."  United States v. Adelson, 441 F. Supp. 2d 506, 515 (S.D.N.Y. 2006).  Under 18 U.S.C. § 3553(a)(3), the Court is directed to consider the kinds of sentences available to meet the purposes of sentencing.

The criminal investigation involving Southeastern Provision and Mr. Kinser's decision to plead guilty in this case have been widely reported in the local and national media.  The general public, employers across the State of Tennessee, and employers nationwide have been made aware of Mr. Kinser's conviction and the resulting consequences of his criminal conduct.  As a result, the statute's objective of general deterrence has already been met in this case.

The statute's objective of specific deterrence also has been met in this case.  As a result of the execution of the search warrant at Southeastern Provision, Mr. Kinser resigned his position

with the company and voluntarily amended his tax returns to remedy all harm caused to the Government and others by his conduct.

The facts in this case do not suggest a term of imprisonment is necessary to achieve the statutory goals in 18 U.S.C. § 3553. "Home detention and probation can be severe punishments, hugely restrictive of liberty, highly effective in the determent of crime and amply retributive." United States v. Coughlin, Criminal No. 06-20005, 2008 U.S. Dist. LEXIS 11263, at *22 (W.D. Ark. Feb. 1, 2008); see also Young, 2010 U.S. Dist. LEXIS 10086, at *11 ("The conditions of supervised release will be a strong deterrent to any future bad conduct."). Mr. Kinser respectfully submits a period of incarceration is not "necessary" to meet the goals of 18 U.S.C. § 3553(a)(2) because he has already been severely punished for his criminal conduct. Instead, a term of six (6) months probation is a sufficient punishment in this case based on the facts unique to this particular defendant. See Young, 2010 U.S. Dist. LEXIS 10086, at *11 ("Certainly it will not take prison to foster respect for the law. Home confinement and lengthy supervised release with multiple conditions will serve the punishment factor well.").

### D.
### *The Need to Provide Restitution and Imposition of a Fine*

Under 18 U.S.C. § 3553(a)(7), the Court is instructed to consider "the need to provide restitution to any victims of the offense." Mr. Kinser voluntarily amended his income tax returns following the raid and paid considerable sums of money to the IRS to correct the erroneous reporting of his wages by Mr. Brantley. Mr. Kinser does not have the financial ability to pay a fine in this case, either in lump sum or on an installment basis. Mr. Kinser respectfully asks this Court to forego imposing a fine in this case given his limited financial resources. Mr. Kinser also asks this Court to consider his need to provide financially for his wife and children. See

8

USSG § 5H1.6 ("Family responsibilities that are complied with may be relevant to the determination of the amount of restitution or fine.").

## V.
## A TERM OF PROBATION IS A PERMISSIBLE AND ACCEPTABLE SENTENCE IN THIS CASE

This Court has the discretion to grant a sentence of probation in this case. See, e.g., United States v. Barnes, 732 F. Supp. 831, 832 – 33 (E.D. Tenn. 1989) (discussing the authority of a Magistrate Judge to sentence a defendant to probation pursuant to 18 U.S.C. § 3561). Because the offense for which Mr. Kinser has already pled guilty constitutes a Class B misdemeanor, the Court is authorized under 18 U.S.C. § 3561(c)(2) to impose a period of probation of not more than five (5) years. The mandatory conditions of probation found in 18 U.S.C. § 3563(a), when coupled with the discretionary conditions of probation the court may impose under 18 U.S.C. § 3563(b), constitute a significant curtailment of Mr. Kinser's freedoms. See Gall v. United States, 552 U.S. 38, 48 (2007) ("Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty.").

In Gall, the United States Supreme Court recognized that a sentence of probation constitutes significant punishment:

> We recognize that custodial sentences are qualitatively more severe than probationary sentences of equivalent terms. Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty. See United States v. Knights, 534 U.S. 112, 119 (2001) ("Inherent in the very nature of probation is that probationers 'do not enjoy the absolute liberty to which every citizen is entitled'" (quoting Griffin v. Wisconsin, 483 U.S. 868, 874 (1987))). Probationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court. They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking. USSG § 5B1.3. Most probationers are also subject to individual "special conditions" imposed by the court.

9

Gall, 552 U.S. at 48. "[I]t bears emphasis that when a judge chooses between a prison term and probation, she is not choosing between punishment and no punishment. Probation is less severe than a prison term, but both are punishment." United States v. Leitch, No. 11-CR-00609 (JG), 2013 U.S. Dist. LEXIS 27796, at *59 (E.D.N.Y. Feb. 28, 2013). "In addition to standard and special conditions, there is an array of alternative sanctions – home confinement, community service, and fines, for example – that allow judges to impose enhanced (and sometimes even constructive) punishment without sending the defendant to prison." Id. at *60.

A term of six (6) months probation is an appropriate punishment for Mr. Kinser given the unique circumstances applicable to this defendant.

## VI.
## PRAYER FOR RELIEF

Mr. Kinser has readily accepted responsibility for his conduct related to the employment of unauthorized aliens in violation of 8 U.S.C. § 1324a(a)(1)(A) by entering into the Plea Agreement with the Department of Justice, thereby saving the Government and this Court the time and expense of prosecution and trial. Mr. Kinser also cooperated with the Government by voluntarily submitting to interviews to assist in the investigation of Southeastern Provision. Mr. Kinser now stands as a stark reminder to others who seek to employee unauthorized aliens in the State of Tennessee and nationwide of the consequences of doing so.

A term of six (6) months probation furthers the sentencing goals set forth in 18 U.S.C. § 3553(a). Mr. Kinser and his family have already paid a heavy price for his criminal conduct, and every other aspect of Mr. Kinser's life stands in stark contrast to his offense of conviction. Requiring Mr. Kinser to also serve a term of imprisonment would be greater than necessary to achieve the goals of 18 U.S.C. § 3553(a). Mr. Kinser respectfully prays this Court will sentence

him to a term of six (6) months probation as the sentence that is sufficient, but not greater than necessary to punish him for his criminal conduct in this case.

Respectfully submitted this 17th day of May, 2019.

**LEWIS, THOMASON, KING, KRIEG & WALDROP, P.C.**

*s/ J. Eric Butler, Esq.*

J. Eric Butler, Esq. (BPR No. 023540)
One Centre Square, Fifth Floor
620 Market Street
P.O. Box 2425
Knoxville, TN 37901
Telephone: 865-546-4646
Facsimile: 865-523-6529
Email: ebutler@lewisthomason.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of May, 2019, a copy of the foregoing DEFENDANT'S SENTENCING MEMORANDUM was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

**LEWIS, THOMASON, KING, KRIEG &
WALDROP, P.C.**

s/ *J. Eric Butler, Esq.*

J. Eric Butler, Esq. (BPR No. 023540)
One Centre Square, Fifth Floor
620 Market Street
P.O. Box 2425
Knoxville, TN 37901
Telephone: 865-546-4646
Facsimile: 865-523-6529
Email: ebutler@lewisthomason.com

# EXHIBIT A

## REDACTED IRS ACCOUNT TRANSCRIPTS AND CHECKS

### (ATTACHED)



# Internal Revenue Service
United States Department of the Treasury

| This Product Contains Sensitive Taxpayer Data |
|---|

## Account Transcript

Request Date:      05-13-2019
Response Date:     05-13-2019
Tracking Number:   100447798402

FORM NUMBER:      1040
TAX PERIOD:       Dec. 31, 2015

TAXPAYER IDENTIFICATION NUMBER: ███████
SPOUSE TAXPAYER IDENTIFICATION NUMBER: ███████

JASO SUSA KINS
<<<<POWER OF ATTORNEY/TAX INFORMATION AUTHORIZATION (POA/TIA) ON FILE>>>>
--- ANY MINUS SIGN SHOWN BELOW SIGNIFIES A CREDIT AMOUNT ---

ACCOUNT BALANCE:                          0.00
ACCRUED INTEREST:                         0.00     AS OF: Sep. 17, 2018
ACCRUED PENALTY:                          0.00     AS OF: Sep. 17, 2018


ACCOUNT BALANCE PLUS ACCRUALS
(this is not a payoff amount):            0.00

             ** INFORMATION FROM THE RETURN OR AS ADJUSTED **

EXEMPTIONS:                                 05
FILING STATUS:              Married Filing Joint
ADJUSTED GROSS INCOME:                64,792.00
TAXABLE INCOME:                       32,192.00
TAX PER RETURN:                            0.00
SE TAXABLE INCOME TAXPAYER:                0.00
SE TAXABLE INCOME SPOUSE:                  0.00
TOTAL SELF EMPLOYMENT TAX:                 0.00

RETURN DUE DATE OR RETURN RECEIVED DATE (WHICHEVER IS LATER)          Apr. 15, 2016
PROCESSING DATE                                                       Feb. 29, 2016

| TRANSACTIONS |
|---|

| CODE | EXPLANATION OF TRANSACTION | CYCLE | DATE | AMOUNT |
|---|---|---|---|---|
| 150 | Tax return filed | 20160605 | 02-29-2016 | $0.00 |
| n/a | 30221-431-92073-6 | | | |
| 806 | W-2 or 1099 withholding | | 04-15-2016 | -$4,425.00 |

| 766 | Credit to your account | | 04-15-2016 | -$3,000.00 |
|-----|------------------------|---|------------|------------|
| 768 | Earned income credit | | 04-15-2016 | -$2,852.00 |
| 846 | Refund issued | | 02-18-2016 | $10,277.00 |
| 960 | Appointed representative | | 05-17-2018 | $0.00 |
| 670 | Payment | | 07-09-2018 | -$5,038.00 |
| 570 | Additional account action pending | | 07-30-2018 | $0.00 |
| 767 | Reduced or removed credit to your account | | 04-15-2016 | $2,186.00 |
| 765 | Reduced or removed earned income credit | | 04-15-2016 | $2,852.00 |
| 806 | W-2 or 1099 withholding | | 04-15-2016 | -$1.00 |
| 290 | Additional tax assessed 00-00-0000 | 20182905 | 08-06-2018 | $0.00 |
| n/a | 36254-599-05658-8 | | | |
| 196 | Interest charged for late payment | 20182905 | 08-06-2018 | $1.00 |
| 196 | Interest charged for late payment | 20182905 | 08-06-2018 | $486.08 |
| 971 | Notice issued CP 0022 | | 08-06-2018 | $0.00 |
| 670 | Payment | | 08-23-2018 | -$486.08 |

This Product Contains Sensitive Taxpayer Data

Case 2:19-cr-00029-MCLC   Document 10   Filed 05/17/19   Page 15 of 45   PageID #: 37

**Jason and Susan Kinser**
196 Kinser Lane
Been Station, TN 37708

5006

97-4/640

July 2, 20 18

Pay to the
Order of U.S. Treasury                                    $ 5,038 00/=

Five thousand thirty-eight 00/100 Dollars

**Suntrust**
ACH R/T 061000104

For 2015 Form 1040                    Susan Kinser



**LEWIS THOMASON**

LEWIS, THOMASON, KING, KRIEG & WALDROP, P.C.
One Centre Square, Fifth Floor
620 Market Street
P.O. Box 2425
Knoxville, TN 37901
T: (865) 546-4646 F: (865) 523-6529

J. Eric Butler
DL: (865) 541-5239
EButler@LewisThomason.com

August 16, 2018

**BY CERTIFIED MAIL - RETURN RECEIPT REQUESTED
(CERTIFIED MAIL RECEIPT NO. 7017 0190 0000 3817 5085)**

Department of the Treasury
Internal Revenue Service
Kansas City, MO 64999-0150

RE:   **Jason Kinser (SSN:** ███████
      **Susan Kinser (SSN:** ███████
      **2015 Form 1040 – Interest Payment**

Dear Sir or Madam:

I am writing on behalf of the above-referenced taxpayers pursuant to Forms 2848 (Powers of Attorney) previously filed with the Service for processing. The purpose of this letter is to transmit the taxpayers' interest payment of $486.08 pursuant to the Notice CP22A dated August 6, 2018. A copy of the Notice is attached hereto for ease of reference. Accordingly, please find enclosed the taxpayer's check #5023 in the amount of $486.08, and the payment slip sent with the Notice.

We ask that you please process the enclosed payment as quickly as possible. Should you have any questions concerning this payment, please contact the undersigned representative.

Thank you for your assistance.

Best regards,

J. Eric Butler

JEB:ker
8221705
Enclosures:   Notice CP22A
              Check # 5023 and Payment Slip

cc:   Jason and Susan Kinser (By U.S. Mail)
      James Craine, CPA (By E-mail)

www.lewisthomason.com                    |Knoxville   |Memphis   |Nashville



Department of the Treasury
Internal Revenue Service
Stop 6525 (SC CIS),
Kansas City MO 64999-0025

**IRS**

| | |
|---|---|
| Notice | CP22A |
| Tax Year | 2015 |
| Notice date | August 6, 2018 |
| Social Security number | ███████ |
| To contact us | 1-800-829-8374 |
| Page 1 of 4 | CAF 9H |



███████████████████████████

JASON KINSER
%J ERIC BUTLER
PO BOX 2425
KNOXVILLE TN 37901-2425

AUG 10 2018
Crawley

243462

Changes to your 2015 Form 1040

# Amount due: $486.08

We made the changes you requested to your
2015 Form 1040 to adjust your:
- total federal income tax withheld
- income from wages, salaries, tips, etc.
- earned income credit

As a result, you owe $486.08.

### Billing Summary

| | |
|---|---|
| Account balance before this change | $ -5,038.00 |
| Increase in credit for tax withheld | -1.00 |
| Decrease in credit | 5,038.00 |
| Increase in interest | 487.08 |
| **Amount due by August 27, 2018** | **$486.08** |

---

**What you need to do immediately**

**If you agree with the changes we made**
- Pay the amount due of $486.08 by August 27, 2018 to avoid additional interest and applicable penalty charges.

Continued on back...

..............................................................................

**IRS**

JASON KINSER
%J ERIC BUTLER
PO BOX 2425
KNOXVILLE TN 37901-2425

| | |
|---|---|
| Notice | CP22A |
| Notice date | August 6, 2018 |
| Social Security number | ███████ |

█████████████████████

**Payment**

- Make your check or money order payable to the United States Treasury.
- Write your Social Security number (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), the tax year (2015), and the form number (1040) on your payment and any correspondence.

Amount due by August 27, 2018

| |
|---|
| $486.08 |

INTERNAL REVENUE SERVICE
KANSAS CITY, MO 64999-0150

███████ XT KINS 30 0 201512 670 00000048608

| What you need to do immediately — continued | If you agree with the changes we made — continued |
|---|---|
| | • Pay online or mail a check or money order with the attached payment stub. You can pay online now at www.irs.gov/payments. |
| | **If you don't agree with the changes** Call 1-800-829-8374 to review your account with a representative. Be sure you have your account information available when you call. |
| | We'll assume you agree with the information in this notice if we don't hear from you. |
| **Payment options** | **Pay now electronically** We offer free payment options to securely pay your tax bill directly from your checking or savings account. When you pay online or with your mobile device, you can: • Receive instant confirmation of your payment • Schedule payments in advance • Reschedule or cancel a payment before the due date |
| | You can also pay by debit or credit card for a small fee. To see all of our payment options, visit www.irs.gov/payments. |
| | **Payment plans** If you can't pay the full amount you owe, pay as much as you can now and make arrangements to pay your remaining balance. Visit www.irs.gov/paymentplan for more information on installment agreements and online payment agreements. You can also call us at 1-800-829-8374 to discuss your options. |
| | **Offer in Compromise** An offer in compromise allows you to settle your tax debt for less than the full amount you owe. If we accept your offer, you can pay with either a lump sum cash payment plan or periodic payment plan. To see if you qualify, use the Offer in Compromise Pre-Qualifier tool on our website. For more information, visit www.irs.gov/offers. |



| Notice | CP22A |
|---|---|
| Tax Year | 2015 |
| Notice date | August 6, 2018 |
| Social Security number | |
| Page 3 of 4 | 9H |

## Payment options – continued



243462

### Account balance and payment history

For information on how to obtain your current account balance or payment history, go to www.irs.gov/balancedue.

If you already paid your balance in full within the past 21 days or made payment arrangements, please disregard this notice.

If you think we made a mistake, call 1-800-829-8374 to review your account.

### Interest charges

We are required by law to charge interest when you do not pay your liability on time. Generally, we calculate interest from the due date of your return (regardless of extensions) until you pay the amount you owe in full, including accrued interest and any penalty charges. Interest on some penalties accrues from the date we notify you of the penalty until it is paid in full. Interest on other penalties, such as failure to file a tax return, starts from the due date or extended due date of the return. Interest rates are variable and may change quarterly. It may include amounts charged before the adjustment. (Internal Revenue Code section 6601)

Note: The interest amount shown here may differ from the amount shown on Page 1. The computation shown here may include interest charges on amounts due before the adjustment.

| Period | Days | Interest rate | Interest factor | Amount due | Interest charge |
|---|---|---|---|---|---|
| 04/15/2016 – 06/30/2016 | 76 | 4.0% | 0.008340144 | $5,037.00 | $42.01 |
| 06/30/2016 – 12/31/2016 | 184 | 4.0% | 0.020311722 | 5,079.01 | 103.16 |
| 12/31/2016 – 06/30/2017 | 181 | 4.0% | 0.020035541 | 5,182.17 | 103.81 |
| 06/30/2017 – 12/31/2017 | 184 | 4.0% | 0.020367931 | 5,285.98 | 107.66 |
| 12/31/2017 – 03/31/2018 | 90 | 4.0% | 0.009911268 | 5,393.64 | 53.46 |
| 03/31/2018 – 06/30/2018 | 91 | 5.0% | 0.012542910 | 5,447.10 | 68.32 |
| 06/30/2018 – 07/09/2018 | 9 | 5.0% | 0.001233552 | 5,515.42 | 6.80 |
| 07/09/2018 – 08/06/2018 | 28 | 5.0% | 0.003842718 | 484.22 | 1.86 |
| Total interest | | | | | $487.08 |

We multiply your unpaid tax, penalties, and interest (the amount due) by the interest rate factor to determine the interest due.

### Additional information

- Visit www.irs.gov/cp22a
- For tax forms, instructions, and publications, visit www.irs.gov or call 1-800-TAX-FORM (1-800-829-3676).
- Paying online is convenient, secure, and ensures timely receipt of your payment. To pay your taxes online or for more information, go to www.irs.gov/payments.
- You can contact us by mail at the address at the top of this notice. Be sure to include your Social Security number, the tax year, and the form number you are writing about.
- Keep this notice for your records.

Continued on back...

Additional information — continued

We're required to send a copy of this notice to both you and your spouse. Each copy contains the information you are authorized to receive. Please note: Only pay the amount due once.

If you need assistance, please don't hesitate to contact us.





**I.R.S**

**Payment**

JASON KINSER
℅ ERIC BUTLER
PO BOX 2425
KNOXVILLE TN 37901-2425

| Notice | CP22A |
|---|---|
| Notice date | August 6, 2018 |
| Social Security number | █████ |

- Make your check or money order payable to the United States Treasury.
- Write your Social Security number (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), the tax year (2015), and the form number (1040) on your payment and any correspondence.

Amount due by August 27, 2018

| | |
|---|---|
| | $486.08 |

INTERNAL REVENUE SERVICE
KANSAS CITY, MO 64999-0150

XT KINS 30 0 201512 670 00000048608

**Jason and Susan Kinser**
196 Kinser Lane
Bean Station, TN 37708

5023
87-4/840

Aug. 9, 20 18

Pay to the
Order of ____ IRS Treasury ____ $486.08

Four hundred eighty-six + 08/100 ____ Dollars

Suntrust
ACH R/T 061000104

lucky

For Jason & Susan Kinser 2015 ____ Form 1040 ____ Susan Kinser



## Internal Revenue Service
United States Department of the Treasury

| This Product Contains Sensitive Taxpayer Data |
|---|

# Account Transcript

| | |
|---|---|
| Request Date: | 05-13-2019 |
| Response Date: | 05-13-2019 |
| Tracking Number: | 100447798402 |

FORM NUMBER:      1040
TAX PERIOD:      Dec. 31, 2016

TAXPAYER IDENTIFICATION NUMBER:
SPOUSE TAXPAYER IDENTIFICATION NUMBER:

JASO SUSA KINS
<<<<POWER OF ATTORNEY/TAX INFORMATION AUTHORIZATION (POA/TIA) ON FILE>>>>

--- ANY MINUS SIGN SHOWN BELOW SIGNIFIES A CREDIT AMOUNT ---

| | | |
|---|---|---|
| ACCOUNT BALANCE: | 0.00 | |
| ACCRUED INTEREST: | 0.00 | AS OF: Sep. 17, 2018 |
| ACCRUED PENALTY: | 0.00 | AS OF: Sep. 17, 2018 |

ACCOUNT BALANCE PLUS ACCRUALS
(this is not a payoff amount):              0.00

** INFORMATION FROM THE RETURN OR AS ADJUSTED **

| | |
|---|---|
| EXEMPTIONS: | 05 |
| FILING STATUS: | Married Filing Joint |
| ADJUSTED GROSS INCOME: | 52,105.00 |
| TAXABLE INCOME: | 19,255.00 |
| TAX PER RETURN: | 67.00 |
| SE TAXABLE INCOME TAXPAYER: | 0.00 |
| SE TAXABLE INCOME SPOUSE: | 438.00 |
| TOTAL SELF EMPLOYMENT TAX: | 67.00 |

| | |
|---|---|
| RETURN DUE DATE OR RETURN RECEIVED DATE (WHICHEVER IS LATER) | Apr. 15, 2017 |
| PROCESSING DATE | Mar. 06, 2017 |

| TRANSACTIONS |
|---|

| CODE | EXPLANATION OF TRANSACTION | CYCLE | DATE | AMOUNT |
|---|---|---|---|---|
| 150 | Tax return filed | 20170705 | 03-06-2017 | $67.00 |
| n/a | 30211-434-73707-7 | | | |
| 806 | W-2 or 1099 withholding | | 04-15-2017 | -$5,286.00 |

| 766 | Credit to your account | | 04-15-2017 | -$3,000.00 |
| 768 | Earned income credit | | 04-15-2017 | -$5,903.00 |
| 846 | Refund issued | | 02-23-2017 | $14,122.00 |
| 960 | Appointed representative | | 05-17-2018 | $0.00 |
| 670 | Payment | | 07-12-2018 | -$7,111.00 |
| 570 | Additional account action pending | | 08-06-2018 | $0.00 |
| 767 | Reduced or removed credit to your account | | 04-15-2017 | $1,456.00 |
| 765 | Reduced or removed earned income credit | | 04-15-2017 | $5,655.00 |
| 290 | Additional tax assessed 00-00-0000 | 20183005 08-13-2018 | | $0.00 |
| n/a | 36254-605-05762-8 | | | |
| 196 | Interest charged for late payment | 20183005 08-13-2018 | | $384.71 |
| 971 | Notice issued CP 0022 | | 08-13-2018 | $0.00 |
| 670 | Payment | | 08-23-2018 | -$385.08 |
| 386 | Write-off of credit balance less than $1 | | 09-17-2018 | $0.37 |

This Product Contains Sensitive Taxpayer Data

Case 2:19-cr-00029-MCLC   Document 10   Filed 05/17/19   Page 24 of 45   PageID #: 46

**Jason and Susan Kinser**
196 Kinser Lane
Bean Station, TN 37708

5007
87-4/640

July 2, 20 18

Pay to the
Order of  U S Treasury                                    $ 7,111 ⁰⁰

Seven thousand one hundred eleven          Dollars

**Suntrust**
ACH R/T 061000104

lucky

For  2016 Form 1040                      Susan Kinser



**LEWIS THOMASON**

LEWIS, THOMASON, KING, KRIEG & WALDROP, P.C.
One Centre Square, Fifth Floor
620 Market Street
P.O. Box 2425
Knoxville, TN 37901
T: (865) 546-4646  F: (865) 523-6529

J. Eric Butler
DL: (865) 541-5239
EButler@LewisThomason.com

August 16, 2018

**BY CERTIFIED MAIL - RETURN RECEIPT REQUESTED**
**(CERTIFIED MAIL RECEIPT NO. 7017 0190 0000 3817 5092)**

Department of the Treasury
Internal Revenue Service
Kansas City, MO 64999-0150

     RE:   **Jason Kinser (SSN:** ███████**)**
            **Susan Kinser (SSN:** ███████**)**
            **2016 Form 1040 – Interest Payment**

Dear Sir or Madam:

     I am writing on behalf of the above-referenced taxpayers pursuant to Forms 2848 (Powers of Attorney) previously filed with the Service for processing. The purpose of this letter is to transmit the taxpayers' interest payment of $385.08 pursuant to the Notice CP22A dated August 13, 2018. A copy of the Notice is attached hereto for ease of reference. Accordingly, please find enclosed the taxpayer's check #5024 in the amount of $385.08, and the payment slip sent with the Notice.

     We ask that you please process the enclosed payment as quickly as possible. Should you have any questions concerning this payment, please contact the undersigned representative.

     Thank you for your assistance.

Best regards,

*J. Eric Butler*

J. Eric Butler

JEB:ker
832 170 5
Enclosures:   Notice CP22A
               Check # 5024 and Payment Slip

cc:     Jason and Susan Kinser (By U.S. Mail)
         James Craine, CPA (By E-mail)

www.lewisthomason.com          |Knoxville   |Memphis   |Nashville



Department of the Treasury
Internal Revenue Service
Stop 6525 (SC CIS),
Kansas City MO 64999-0025

**IRS**

| Notice | CP22A |
|---|---|
| Tax Year | 2016 |
| Notice date | August 13, 2018 |
| Social Security number | |
| To contact us | 1-800-829-8374 |
| Page 1 of 3 | CAF 9H |

JASON KINSER
%J ERIC BUTLER
PO BOX 2425
KNOXVILLE TN 37901-2425

AUG 16 2018

131625

Changes to your 2016 Form 1040

## Amount due: $384.71

We made the changes you requested to your
2016 Form 1040 to adjust your:
• income from wages, salaries, tips, etc.
• tax credits
• earned income credit

As a result, you owe $384.71.

**Billing Summary**

| | |
|---|---|
| Account balance before this change | $ -7,111.00 |
| Decrease in credit | 7,111.00 |
| Increase in interest | 384.71 |
| Amount due by September 3, 2018 | $384.71 |

---

**What you need to do immediately**

**If you agree with the changes we made**
• Pay the amount due of $384.71 by September 3, 2018 to avoid additional interest and applicable penalty charges.

Continued on back...

........................................................................................................................



**IRS**

**Payment**

JASON KINSER
%J ERIC BUTLER
PO BOX 2425
KNOXVILLE TN 37901-2425

| Notice | CP22A |
|---|---|
| Notice date | August 13, 2018 |
| Social Security number | |

• Make your check or money order payable to the United States Treasury.
• Write your Social Security number (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), the tax year (2016), and the form number (1040) on your payment and any correspondence.

Amount due by September 3, 2018

$384.71

INTERNAL REVENUE SERVICE
KANSAS CITY, MO 64999-0150

ılııı|ıını||ılı|ılı|ı|ıılılı|ılıılıdııı||ılılı|ıl|

XT KINS 30 0 201612 670 00000038471

| | |
|---|---|
| What you need to do immediately — continued | If you agree with the changes we made — continued<br>• Pay online or mail a check or money order with the attached payment stub.<br>  **You can pay online now at www.irs.gov/payments.**<br><br>**If you don't agree with the changes**<br>Call 1-800-829-8374 to review your account with a representative. Be sure you have your account information available when you call.<br><br>We'll assume you agree with the information in this notice if we don't hear from you. |
| Payment options | **Pay now electronically**<br>We offer free payment options to securely pay your tax bill directly from your checking or savings account. When you pay online or with your mobile device, you can:<br>• Receive instant confirmation of your payment<br>• Schedule payments in advance<br>• Reschedule or cancel a payment before the due date<br><br>You can also pay by debit or credit card for a small fee. To see all of our payment options, visit www.irs.gov/payments.<br><br>**Payment plans**<br>If you can't pay the full amount you owe, pay as much as you can now and make arrangements to pay your remaining balance. Visit www.irs.gov/paymentplan for more information on installment agreements and online payment agreements. You can also call us at 1-800-829-8374 to discuss your options.<br><br>**Offer in Compromise**<br>An offer in compromise allows you to settle your tax debt for less than the full amount you owe. If we accept your offer, you can pay with either a lump sum cash payment plan or periodic payment plan. To see if you qualify, use the Offer in Compromise Pre-Qualifier tool on our website. For more information, visit www.irs.gov/offers. |

**Payment options – continued**



131625

**Account balance and payment history**

For information on how to obtain your current account balance or payment history, go to www.irs.gov/balancedue.

If you already paid your balance in full within the past 21 days or made payment arrangements, please disregard this notice.

If you think we made a mistake, call 1-800-829-8374 to review your account.

## Interest charges

We are required by law to charge interest when you do not pay your liability on time. Generally, we calculate interest from the due date of your return (regardless of extensions) until you pay the amount you owe in full, including accrued interest and any penalty charges. Interest on some penalties accrues from the date we notify you of the penalty until it is paid in full. Interest on other penalties, such as failure to file a tax return, starts from the due date or extended due date of the return. Interest rates are variable and may change quarterly. It may include amounts charged before the adjustment. (Internal Revenue Code section 6601)

Note: The interest amount shown here may differ from the amount shown on Page 1. The computation shown here may include interest charges on amounts due before the adjustment.

| Period | Days | Interest rate | Interest factor | Amount due | Interest charge |
| --- | --- | --- | --- | --- | --- |
| 04/15/2017 – 06/30/2017 | 76 | 4.0% | 0.008363088 | $7,111.00 | $59.47 |
| 06/30/2017 – 12/31/2017 | 184 | 4.0% | 0.020367931 | 7,170.47 | 146.05 |
| 12/31/2017 – 03/31/2018 | 90 | 4.0% | 0.009911268 | 7,316.52 | 72.52 |
| 03/31/2018 – 06/30/2018 | 91 | 5.0% | 0.012542910 | 7,389.04 | 92.68 |
| 06/30/2018 – 07/12/2018 | 12 | 5.0% | 0.001645075 | 7,481.72 | 12.31 |
| 07/12/2018 – 08/13/2018 | 32 | 5.0% | 0.004392882 | 383.03 | 1.68 |
| Total interest | | | | | $384.71 |

We multiply your unpaid tax, penalties, and interest (the amount due) by the interest rate factor to determine the interest due.

## Additional information

- Visit www.irs.gov/cp22a
- For tax forms, instructions, and publications, visit www.irs.gov or call 1-800-TAX-FORM (1-800-829-3676).
- Paying online is convenient, secure, and ensures timely receipt of your payment. To pay your taxes online or for more information, go to www.irs.gov/payments.
- You can contact us by mail at the address at the top of this notice. Be sure to include your Social Security number, the tax year, and the form number you are writing about.
- Keep this notice for your records.

We're required to send a copy of this notice to both you and your spouse. Each copy contains the information you are authorized to receive. Please note: Only pay the amount due once.

If you need assistance, please don't hesitate to contact us.



## IRS



## Payment

JASON KINSER
%KATHERINE S GOODNER
PO BOX 2425
KNOXVILLE TN 37901-2425

| Notice | CP22A |
| --- | --- |
| Notice date | August 13, 2018 |
| Social Security number | |

- Make your check or money order payable to the United States Treasury.
- Write your Social Security number (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), the tax year (2016), and the form number (1040) on your payment and any correspondence.

Amount due by September 3, 2018

$384.71

# 385.08

INTERNAL REVENUE SERVICE
KANSAS CITY, MO 64999-0150

XT KINS 30 0 201612 670 00000038471

---

Jason and Susan Kinser                5024
196 Kinser Lane                       87-4/640
Bean Station, TN 37708

Aug. 9, 2018

Pay to the Order of  IRS Treasury            | $ 385.08

Three hundred eighty-five + 08/100      Dollars

Suntrust
ACH R/T 061000104

Form
1040
For Jason + Susan Kinser 2016      Susan Kinser

---

**EXHIBIT B**

**LETTERS OF SUPPORT FOR MR. KINSER**

**(ATTACHED)**

14

March 18, 2019

To Whom it may Concern:

RE: Jason Kinser

I have known Jason for many years. I work where he does his banking, I go to Church with him and his family, and we are connected as family. Jason, he is a good man, a Christian man, he serves as Deacon at our Church. He is humble and kind.

Jason is a hard worker, he has worked since a young man, working on his public job then going home to stay busy with farming that he & his two brothers work together on. He has worked hard to provide for his family.

Jason is a great family man, he is a son, husband and father. He has three young children that need their father. He has two sons, loves spending time with them, they do a lot of outdoor sports together. He has a beautiful little girl that has her Daddy wrapped around her little finger.

Jason is sorry for any wrong doing that he has done, he is remorseful and very eager to go on with his life. He has a new job, and he wants and needs to be there to be able to pay his bills and provide for his family.

Connie Walker

Connie Walker
CSR/Branch Manager
Citizens Bank & Trust Co. of Grainger County
1131 Hwy 11W
Bean Station, TN 37708

# *Sneedville Furniture Co.*

*Doug Garland-owner*
*Po Box 296*
*1214 Main St.*
*Sneedville, Tn 37869*
*423-733-8174*

To Whom it May concern,

This Letter that cl am Writing concerns Jason Kinser. Whom cl Have Known For Many Years. He Has always Been a very Humble + Honest Man and Has always Took His Family To church, that is Where cl First Met Him and He Still Remains the Same Today. He comes From a Very Honest and Hard Working and God Fearing Family.

Thank you Very Much

Doug Garland

May 3, 2019

My name is Howard Morgan. I have know Jason Kinser a long time. He is a good Christian man, who has been a loyal friend and family man. He attends church regularly with his family and supports his church 100%. Mr. Brantley was his boss and told him what to do on his job and he should not be incarcerated for that. His family, Church & Community need him. It is my hope that he will not be incarcerated.

Howard Morgan

Crystal Blake
1230 Newman Hollow Rd.
Bean Station, TN 37708

To Whom It May Concern:

I have known Jason Kinser for many years, from Elementary School to present, totaling 29 years. In that time, I have witnessed a good student to all his teachers and a Beta Club inductee. In High School, Jason worked part time at a local Tire Company, a job that most High School Students would/could not do. I realized then that he is a hard worker and would soon be a good provider for his future family.

I had the privilege of visiting the hospital when his first son was born. I watched in amazement as he helped his wife, as she was in a lot of pain from just giving birth. He was and has always been very hands on when helping with his children. He is truly a family man and would help his wife and children with anything they would need.

Jason not only has worked full time but has always worked many hours after his "regular" job baling hay, working with cattle or working in the garden that he and his wife grow each year. He also helps his mother with many tasks after the loss of his father.

Through the years, Jason has proven that he is a family man, a contributor to society and a very good citizen. He will go above and beyond to help anyone in need.

Sincerely,

Crystal Blake

Crystal Blake

April 30, 2019

To Whom It May Concern:

My name is Sylvia Hipshire and I am the bookkeeper for Rutledge Middle School, as well as a special education bus driver within the Grainger County School Systems. I would like to tell you about Jason Kinser. I have personally known Mr. Kinser in excess of twenty years and have known him indirectly through others since his birth. He is a hard-working young father of three wonderful children, whom I love dearly. He has always worked full-time on a public job as well as worked after hours on his property with the upkeep or maintenance of his land and farming.

He has proven to be a good father as when you see him, you will see both of his boys and often his daughter. He takes his boys hunting for turkey and deer on the weekends as well as often goes fishing with them in the evenings. He enjoys letting his daughter play outside and plans to teach her hunting as well. He has taken both older children to their hunter's education course and taught gun safety at home to ensure they are responsible hunters and trappers.

Jason and his family attend the church where my husband and I go and he is a very faithful member, much more than most. Unless there is sickness or death, he and his family will be in attendance, putting God above other worldly things.

I know that this past year has been a very stressful year for the Kinser family and feel that the suffering they have done far surpasses what a normal person would have experienced. He would not deliberately break any law and this situation has emotionally and financially stressed both he and his family. I hope that the court will see that this man is truly a good and decent man.

Sincerely,

Sylvia Hipshire

To Whom It May Concern:

I have had the opportunity to know Jason Kinser for several years. He exhibits an outstanding work ethic and has an excellent rapport with his peers. He is also very dependable, dedicated and trustworthy.

Jason has always exhibited a pleasant and friendly personality and he has maintained a positive and optimistic attitude about life. He is one of the finest young men that I have had the privilege of knowing and he has always demonstrated a very high moral standard.

Jason is an honest and devoted husband and father. Jason's words and actions have always been upstanding, and he has displayed tireless devotion in everything that he has accomplished.

Sincerely,

Dwayne Brabson
Principal
Bean Station Elementary

Gina Thompson

900 Coleman Rd.

Tazewell, TN 37879


April 10, 2019


Dear Judge Corker,


I am writing this letter to show my support for my friend Jason Kinser. I have known Jason for over 20 years and I consider him a friend; which is why I am happy to write this letter on his behalf. Though I understand the seriousness of this matter, I hope the court will show him some leniency.

Jason has three children that depend on him to the fullest extent. He cares for and loves his children more than anything. A few months ago, I saw Jason out with his family and his children were so polite and kind. I could tell this situation was weighing heavy on Jason's shoulders because he terrified of the possibility of not being with his children.

In conclusion, I understand how serious this matter is. However, I believe that Jason regrets what he did and is sorry for it. I believe he fully understands what he has done and will never do it again. Jason is exception individual and I am happy to call him a friend. I hope the court will take this into consideration during sentencing.


Sincerely,

Gina Thompson

Gina Thompson

Taylor Lamb

5227 Lakeshore Drive

Bean Station, TN 37708


April 9, 2019

Dear Judge Corker,

I have known Jason Kinser for approximately 3 years now and consider him a friend. It troubles me that he is in this matter and for that reason I am happy to write this character letter on his behalf. I understand the seriousness of this matter however, I hope the court will show him some leniency.

Jason Kinser has always been kind to me. I worked with Jason and on my first day of work he was really the only person that talked to me. I really appreciated that and it made me think a lot of him. Jason is also a wonderful father. He has three children that love and depend on him. He is very proud of them and always enjoyed showing them off. Occasionally, I would see him out with his kids and you can tell how much love there is between them.

In conclusion, I believe that Jason is sorry for what he has done and I also believe he will never do it again. Jason is a good person and I am happy to call him a friend. I hope the court will take this letter into consideration while sentencing.

Sincerely,

Taylor Lamb

April 7, 2019

To Whom It May Concern

Re: Jason Kinser

I am writing this letter in reference to Jason. I have known Jason his entire life and he is a hard working family man. He is the father of 3 young children. He and his wife, Susan are wonderful parents. They met in high school and have been married several years. Jason loves his family and is needed to raise his children. His father passed away a few years ago; therefore, he helps his mother as much as possible. Jason always tries his best to help those in need. He has always been a loyal friend and an asset to this community.

Jason began working for James Brantley, owner of Eastern Provision Packing House, upon graduation from high school. I truly feel that Jason was only following instructions from his employer, James Brantley. Grainger County is a small area with limited opportunities for employment. Jason grew up about ½ mile from the packing house and this type of work has provided for his family.

We live in a small community and numerous people have worked at this packing house. James Brantley was a respectable man in the community and taught Sunday school weekly. His wife, Pam Brantley was a third grade teacher for many years. The owners were mentors in the community. I believe Jason was only providing for his family without knowledge of any wrong doing. He plead guilty because of lack of money to continue paying legal fees. The owners were the ones to profit and were aware of all hiring in the facility. The office employees were in charge of verifying if applicants were legal. I believe this to be a horrible in justice.

Sincerely,

Bryant Dalton

Bryant Dalton

April 23, 2019

To whom it may concern:

We would like to take this opportunity to address our acquaintance with Jason Kinser. We have lived near Mr. Kinser for approximately 20 years and we are proud to be acquainted with him and his family. As a neighbor, he has gladly helped us numerous times over the years. He and his family have watched our home and property while we were on vacation; feeding and watering our livestock, rotating our vehicles, and checking our outbuildings and barns. He had the keys to our vehicles, our home, and our outbuildings while we were away. We trust him unquestionably!

Jason has always been "only a phone call away". If we needed him, he has always come to help. He and his son came in the rain to help catch and medicate a sick cow. At one time, he saw dogs running our sheep. He entered the field and ran the dogs off before they could harm our herd. In years gone by, when hay was scarce, he has offered us hay when we ran out. Neighbors like that are hard to find, and we truly appreciate everything he and his family have done.

Jason and his sons have deer hunted on our property for more than fifteen years. They never fail to give us venison if they are lucky enough to bag a deer. Furthermore, they even pay to have it processed and packaged. They are true sportsmen. We have never been worried about our cattle, even though they were within firing range from where they hunt. Our gates have always been closed back and they have never abused the privilege of hunting.

We have owned rental property for eighteen years and have vetted many renters in that time. One of our renters were Jason's mother and father-in-law. We were unacquainted with them but agreed to rent to them based solely on Jason's referral. They were wonderful people and we were saddened to lose them as renters when they purchased their own home.

Not only is Jason Kinser and his family our neighbors, we are honored to call them our friends. They are a true asset to this community. For further information feel free to contact us at 865-767-3604.

Respectfully submitted,

James L. Jones

Stephanie T. Jones

04/15/2019

To Whom It May Concern:

I am writing in reference to Jason Kinser. I have known Jason for around 5 years now, and we are good friends. I feel I am in a position to speak of Jason Kinser's moral character. I hope and trust you will take my letter into account when it comes to your attention.

Jason Kinser is a good person, in whom I have found to be trustworthy. He has always proven to be generous with others. He has a strong sense of determination in which he applies to his family, job, community, church, and friends. He possesses a strong sense of integrity also. He has proven that he strives to make sure he does right thing by people. He is a father, husband, son, brother, and friend to many. I value his friendship.

I realize you may not personally know Jason Kinser, so I hope you will truly consider my letter and others you may receive concerning him. Please understand that Jason is the kind of person in which people want to be around. I place high confidence and trust in Jason Kinser. I feel that has something positive to say about him. The characteristics Jason possess are what I look for in people and I'm honored to call him my friend. So please let my letter be a factor in any decision you may have to make.

Sincerely,

Tracey Kinningham

Tracey Kinningham

To whom it may concern

When I was asked if I thought I'd be comfortable writing a letter for the Kinser boys (men) if you would. I said I'd be glad to write a few things I know about them.

Jason is a quiet, reserved guy who is a devoted family man. As a young boy before his adult years he was always polite, never used any profenity, nor was he a rebelious teen who did his own thing with out consideration for others. He was a loving son to his parents I never knew him of doing anything they would be disappointed in He never had problems at school always getting along with his fellow persons. As he was growing up he always attended church with his family and learned morels of life on kindness and graduate toward people. He worked as a teenager helping provide income to help his parents and himself for things he needed. later in life he married. had three great kids were we still stayed responsible and loving raising his kids in church.

teaching them to show kindness toward other kids and they all loved the joy of hunting and spending times together.

He's has grown into the kind, gentle man who has worked very hard. and probadly at the same place since high school. He's been a light in the community. the county as a whole he lives in a way as father, son, and husband anyone would be proud to call him as someone they know as a friend

He is conscientions in how he carrys out responsibilies and friendness his upbeat personsonality and the amazingly positive attitude is displayed in his daily walk of life

LC Shortuck
Syl Bing Salow

To Whom it may concern.

Ive Knowed Jason Kincer for about
25 years and he's a realy good Person.
He has always been straight foward
and honest with me. He is a good
freind, Father and husband. Always good
to Provide for his family. I feel that
Jason was only doing what he was
told to do byy his Boss. Just a really
good guy,

Sincerily

Danny Morgan